

United States District Court
Northern District of Alabama
Eastern Division

03 JUN -4 AM 10: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

Larry Darnell Stone, Sr.,            ]
                                     ]
   Plaintiff(s),              ]
                                     ]
vs.                                  ]   CV-02-CO-1321-E
                                     ]
Calhoun County, Alabama,             ]
                                     ]
   Defendant(s).              ]
                                     ]   ENTERED
                                     ]
                                         JUN 0 4 2003

**Memorandum of Opinion**

### I.  Introduction.

Presently before the court are motions to dismiss the second amended complaint, filed by defendants Calhoun County Sheriff Larry Amerson ("Sheriff Amerson"), Calhoun County Deputy Sheriff Dan Malloy ("Deputy Malloy"), and Calhoun County Deputy Sheriff Matthew Wade ("Deputy Wade"), on December 23, 2002, [Doc. ## 36-38] and January 27, 2003, [Doc. ## 45-47]. The issues raised therein have been briefed by the parties and are now ripe for decision. Upon due consideration, the motions will be granted in all respects.

### II.  Facts.[1]

Larry Darnell Stone, Sr. ("Mr. Stone") asserts claims under 42 U.S.C. § 1983 against defendants Deputies Malloy and Wade for alleged violations of his constitutional right to be free from: an arrest without probable cause, the use of excessive force, assault and battery,

---

[1] The plaintiff has previously submitted in this case his sworn affidavit, along with that of his wife, and asks the court to consider the facts stated therein in reaching a decision on the motions to dismiss. [Doc. ## 30-31.] However, because these are motions to dismiss under Rule 12(b)(6), the court will not consider any evidence outside the pleadings. See Fed. R. Civ. P. 12(b). Therefore, the facts as stated below are gleaned only from the pleadings of the parties.



and malicious prosecution. [Doc. # 34, Second Am. Compl.] He further asserts a § 1983 claims against Sheriff Amerson for failure to train and supervise his deputies, which failure he claims led to the alleged constitutional violations perpetrated by Deputies Malloy and Wade. [*Id.*][2]

Mr. Stone's claims are founded upon events that allegedly occurred in connection with his arrest on May 28, 2000. The second amended complaint alleges that on May 28, 2000, Deputies Malloy and Wade, "while acting within the scope of their duty as Deputy Sheriffs of Calhoun County, Alabama, and in concert," went to the residence of Mr. Stone, a forty-five year old African-American male. The deputies informed Mr. Stone that they were there to arrest Larry Stone, Jr., who was then twenty-one years old. Mr. Stone showed the deputies his picture identification to verify his age. Despite the discrepancy between the ages of Larry Stone, Jr. and Mr. Stone,[3] the deputies arrested Mr. Stone pursuant to the arrest warrant for Larry Stone, Jr. The plaintiff alleges that this arrest was made without probable cause in violation of the Fourth Amendment.

The second amended complaint further alleges that the deputies utilized excessive force in arresting Mr. Stone; specifically, Mr. Stone avers that the deputies grabbed him, threw him to the ground, and used mace on him. Mr. Stone alleges that the use of excessive

---

[2] This is the third time this case has come before the court on proper motions to dismiss. The court will not re-hash the procedural background of the case at this juncture as it is certain all involved are fully aware of the context in which the instant motions arise. The court will note, however, that it has given counsel for the plaintiff numerous chances, complete with detailed instructions, to state a claim capable of surviving the defendants' inevitable 12(b)(6) motions.

[3] Significantly, there is no indication in the record that the warrant or other information in possession of the deputies described Larry Stone, Jr., with reference to his age. Therefore, there is no reason to believe that the deputies were privy to the age discrepancy.

force to effectuate an arrest was clearly prohibited by the Fourth Amendment to the United States Constitution at the time of the arrest in question. Mr. Stone alleges that as a result of the unlawful use of excessive force, he received injuries to his shoulder, wrist, and eye. Additionally, Mr. Stone claims his constitutional rights were violated by the deputies through their allegedly malicious prosecution of him for resisting arrest and intentionally obstructing, impairing, or hindering the administration of law or governmental functions. Mr. Stone couches this allegation as both a malicious prosecution § 1983 claim and an abuse of process § 1983 claim.

Finally, Mr. Stone alleges that Sheriff Amerson's reckless, wanton, and malicious failure to train and supervise Deputies Malloy and Wade proximately caused the above-mentioned injuries, thus further violating his right to be free from arrests made without probable cause and from the use of excessive force. As a result of all of the foregoing, Mr. Stone alleges claims for monetary damages brought pursuant to 42 U.S.C. § 1983.

### III.    Standard.

The defendants argue that this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the plaintiff has failed to state a claim upon which relief may be granted. It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege facts showing that the defendant's acts or omissions, done under color of state law, deprived him of a right, privilege, or immunity protected by the Constitution of the laws of the United States." *Emory*

v. *Peeler*, 756 F.2d 1547, 1554 (11th Cir. 1985). In analyzing the complaint, the court must accept the facts as alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## IV. Discussion.

### A. The contours of a qualified immunity defense.

The defendants have invoked the defense of qualified immunity to the plaintiff's claims against them. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A valid defense of qualified immunity should be recognized as soon as possible, "preferably at the motion to dismiss or summary judgment stage of the litigation." *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002). To be successful on a qualified immunity defense, a public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). If the defendant makes such a showing, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Lee*, 284 F.3d at 1194.

The Eleventh Circuit utilizes a two-part test to ascertain whether a defendant is entitled to qualified immunity. First, the court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Vinyard*, 311 F.3d at 1346 (citing *Hope v. Pelzer*, 536 U.S. 730, ___, 122 S. Ct. 2508, 2513 (2002)). If the court is convinced that a

constitutional right would have been violated under the plaintiff's version of the facts, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* The court will deny a public official qualified immunity only if the plaintiff convinces the court that the constitutional right at issue was clearly established at the time of the alleged violation. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

According to the Eleventh Circuit's discussion of qualified immunity in *Vinyard*, there are three ways in which a plaintiff can establish that the constitutional right in question was clearly established at the time it was allegedly violated. First, the plaintiff can establish that the circumstances of his claim present an "obvious clarity" case: one in which "the words of the pertinent federal statute or federal constitutional provision . . . [are] specific enough to establish clearly the law applicable to particular conduct . . . and to overcome qualified immunity, even in the total absence of case law." *Vinyard*, 311 F.3d at 1350. The Eleventh Circuit further defined the "obvious clarity" case as one in which "the words of a federal statute or federal constitutional provision [are] so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.*

The second way of establishing a clearly established constitutional right arises where "the conduct is not so egregious as to violate [a constitutional provision] on its face, [but there are] some broad statements of principle in case law [that] are not tied to particularized facts [that] can clearly establish law applicable in the future to different sets of detailed facts." *Id.* at 1351. While it was unable to give specific examples of what kinds of cases might meet this type of clearly established constitutional right, the court was careful to point out that "many broad principles of law [such as the statement that the use

of excessive force by a law enforcement agent is unconstitutional] remain insufficient to give fair notice or warning." *Id.* at 1351 n.21.

Finally, a plaintiff can succeed in showing the violation of a clearly established constitutional right by bringing to the court's attention "cases in which the Supreme Court or [the Eleventh Circuit] has said that 'Y Conduct' is unconstitutional in 'Z Circumstances.'" *Id.* at 1351. "If the circumstances facing [the] governmental official [in the case before the court] are not fairly distinguishable [from a Supreme Court or Eleventh Circuit case declaring certain conduct unconstitutional], the precedent can clearly establish the applicable law." *Id.* at 1352. Thus, this third means of showing that the constitutional right in question is clearly established requires a significant degree of factual similarity between the case before the court and the precedent relied upon by the plaintiff. *See id.*

### B.  Discretionary authority.

To be entitled to qualified immunity, Sheriff Amerson and Deputies Malloy and Wade must first prove that the alleged violations in question took place while they were acting within the scope of their discretionary authority. To meet their burden under this part of the qualified immunity analysis, the defendants must show "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). The alleged constitutional violations in this case occurred at the time of Mr. Stone's arrest. In arresting Mr. Stone, Deputies Malloy and Wade were

clearly acting "pursuant to the performance of [their] duties and within the scope of [their] authority," *id.*; thus, they are entitled to raise the qualified immunity defense.[4]

Mr. Stone's § 1983 claim against Sheriff Amerson is based on Sheriff Amerson's alleged failure to adequately train and supervise his deputies. Sheriff Amerson's actions (or inaction) with respect to training his deputies are certainly "undertaken pursuant to the performance of his duties and within the scope of his authority," *id.*; thus, Sheriff Amerson is entitled to raise the qualified immunity defense as well.

**C.     The claim against Sheriff Amerson.**

The plaintiff alleges that Sheriff Amerson violated his constitutional rights by failing to properly train and supervise his deputies. As mentioned above, the first step in determining whether Sheriff Amerson is entitled to a qualified immunity defense is to ascertain whether, if proven, the allegations of the complaint state a violation of Mr. Stone's civil rights. It is well settled "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). However, a supervisor may be held liable for an alleged constitutional violation if the supervisor personally participated in the alleged violation or if there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. *Hartley*, 193 F.3d at 1269. The requisite causal connection may be established where the supervisor's improper "custom or policy . . .

---

[4] Indeed, the second amended complaint alleges that the claims arose "while [the deputies were] acting within the scope of their duty as Deputy Sheriffs of Calhoun County, Alabama." [Doc. # 34, Second Am. Compl.]

results in deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (citation omitted). The plaintiff can establish this causal link, and survive a motion to dismiss, "if he alleges a history of widespread abuse that would put a responsible supervisor on notice of the need to correct the alleged deprivation and that the supervisor has failed to do so." *Sanders v. Miller*, 837 F. Supp. 1106, 1112 (N.D. Ala. 1992).

Mr. Stone's allegations with respect to Sheriff Amerson fall well short of alleging a history of widespread abuse that would put a reasonable supervisor on notice of a need to correct the alleged deprivation. The sum total of Mr. Stone's allegations against Sheriff Amerson are that Mr. Stone's injuries "were proximately caused by the failure of Sheriff . . . Amerson to train and supervise [his d]eputies," and that "[s]aid failure to train was reckless, wanton, malicious and without due regard for [the p]laintiff's . . . constitutional rights." [Doc. # 34, Second Amended Complaint.] These conclusory allegations are simply insufficient to state a § 1983 claim against Sheriff Amerson. *See Sanders*, 837 F. Supp. at 1109 ("Vague and conclusory allegations of civil rights violations or conspiracies to violate civil rights are not sufficient and must, for that reason, be dismissed."). Therefore, the motion to dismiss is due to be granted as to the claim asserted against Sheriff Amerson.

### D. The claims against Deputies Malloy and Wade.

The plaintiff has brought essentially three different § 1983 claims against Deputies Wade and Malloy: one based on his arrest on the warrant out for the arrest of his son; one for the alleged use of excessive force, and one based on the deputies' alleged malicious prosecution of him for resisting arrest. [Doc. # 34, Second Am. Compl.] The court will address each of these claims in turn.

1. **The arrest.**

    a. **Do the plaintiff's allegations, if true, establish the violation of a constitutional right?**

The plaintiff alleges that his constitutional right to be free from unlawful searches and seizures was violated when the deputies arrested him pursuant to a valid arrest warrant issued for his son. However, the plaintiff does not allege that the warrant included pertinent identifying information that would enable the deputies to ascertain whether the individual they were arresting was, in fact, Larry Stone, Jr.[5] Assuming, for purposes of this motion, that the deputies knew that the suspect they were authorized to arrest pursuant to the warrant was approximately twenty-one years old, the arrest of Mr. Stone, who was then aged forty-five, and produced valid identification to prove his age, would have been an unreasonable mistake. Under *Rodriguez*, the mistaken arrest of the wrong individual under an arrest warrant for another individual will violate the Fourth Amendment if the mistake was not reasonable under the circumstances. *See Rodriguez*, 280 F.3d at 1346-47. Thus, assuming the deputies were privy to the discrepancy between the ages of Mr. Stone and his son, the allegations of the complaint, if proven, would establish the violation of Mr. Stone's Fourth Amendment right to be free from unlawful searches and seizures. However, as noted above, the plaintiff did not plead, nor has he argued, that the arrest warrant gave the deputies notice that the individual they were supposed to arrest was actually twenty-one. As such, the plaintiff has not met his burden of pleading the violation of a constitutional right.

---

[5] In particular, the plaintiff does not allege that the arrest warrant stated Larry Stone, Jr.'s approximate age or date of birth.

> **b.  At the time of the alleged violation, was it clearly established that the deputies' conduct was unconstitutional?**

Even if Mr. Stone had properly pled the violation of a constitutional right, establishing a constitutional violation is only the first step in the two-part qualified immunity analysis. The plaintiff must establish, using one of the three means of doing so described in *Vinyard*, that the constitutional right in question was clearly established at the time of the arrest. As the defendants point out, this is not an "obvious clarity" case – there is no federal constitutional provision or federal statute specifically describing and outlawing the actions of the deputies in arresting Mr. Stone, nor is the conduct alleged "so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard*, 311 F.3d at 1350. Nor does this case fall into the second category of cases described by *Vinyard*. There is no case law that has, with "broad statements of principle," *id.* at 1351, determined that, under all circumstances, the mistaken arrest of an individual under a valid arrest warrant for another individual is unconstitutional.

Therefore, to establish that the constitutional right allegedly violated by the deputies in this case was clearly established, the plaintiff must show that fact-specific precedents existing at the time of the alleged constitutional violation established the wrongfulness of the deputies' actions. The plaintiff has not done so, nor can he, given the Eleventh Circuit's discussion of the issue of a mistaken arrest under a valid arrest warrant for another person in *Rodriguez*. In that case, the Eleventh Circuit noted that it had, in January 2002, "no precedents for what constitutes an unreasonable seizure due to a mistaken identification and arrest under a valid warrant in the field." *Rodriguez*, 280 F.3d at 1346. If no precedents

existed in January 2002, none existed at the time of the arrest at issue in this case – May 28, 2000. Thus, the plaintiff cannot prove, through fact-specific precedents, that the deputies were on notice that their conduct on May 28, 2000, in arresting Mr. Stone, was in violation of a clearly established constitutional right. The deputies are therefore entitled to qualified immunity on the § 1983 claim challenging the mistaken arrest of Mr. Stone.

    2.    **Excessive force.**

Mr. Stone alleges that the deputies used excessive force in subduing and arresting him, in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, Mr. Stone challenges the deputies' actions in "grabbing him, throwing him to the ground, [and] macing him." [Doc. # 34, Second Am. Compl.] The first step in assessing the applicability of the qualified immunity defense to this claim is to determine whether the facts as alleged, if proven, establish a constitutional violation.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. In determining whether a particular amount of force is excessive, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard*, 311 F.3d at 1347. Courts evaluate several factors in assessing the reasonableness of force applied, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). *See also Lee*, 248 F.3d at 1197-98 (citing *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986) and stating that "in determining if force was

reasonable, courts must examine (1) the need for and the application of force, (2) the relationship between the need and the amount of force used, and (3) the extent of the injury inflicted").

Unfortunately, because the second amended complaint is lacking in sufficient detail, it is difficult for the court to engage in a thorough analysis of the force used in this case with respect to the factors listed above. Deputies Malloy and Wade were arresting Mr. Stone pursuant to a valid arrest warrant; however, the court is not aware of the nature of the underlying criminal offense for which the warrant was issued.[6] Without that knowledge, it is impossible for the court to balance the amount of force used against the severity of the crime committed by the individual named in the warrant. Furthermore, the plaintiff makes no allegations with respect to the need for the force in light of the plaintiff's resistance to, or acquiescence in, the arrest. Nor does he sufficiently describe the severity of his injuries; he alleges only that he sustained injuries to his shoulder, wrist, and eye. This information is critical to an assessment of the reasonableness of the force used, and without it, the court cannot hold that the plaintiff's allegations, if proven, would establish a constitutional violation. See Sanders, 837 F. Supp. at 1109 ("Vague and conclusory allegations of civil rights violations or conspiracies to violate civil rights are not sufficient and must, for that reason, be dismissed."). As such, the plaintiff's § 1983 claim based on the deputies' use of excessive force is due to be dismissed.

---

[6] Although it is clear now that the deputies arrested the wrong Larry Stone pursuant to said warrant, the plaintiff does not allege that the deputies were aware of the age of Larry Stone, Jr. at the time they arrested Mr. Stone. Therefore, given that they arrested Mr. Stone, it is fair to assume that the deputies believed they were arresting the Larry Stone in whose name the arrest warrant was issued, and therefore, that the individual they were arresting had committed the crime for which the warrant was issued.

3.  **Malicious prosecution/abuse of process.**

Mr. Stone alleges a § 1983 claim against the deputies for malicious prosecution because they caused to be issued a warrant for his arrest on the charge of resisting arrest and intentionally obstructing, impairing, or hindering the administration of law or government functions. As to this claim, the court is of the opinion that the allegations of the complaint, if proven, do not establish the violation of a constitutional right. Therefore, it is due to be dismissed.

While it is clear that a § 1983 claim can be premised on a theory akin to a state law malicious prosecution claim, see, e.g., Rowe v. Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002), the Eleventh Circuit has clearly held that police officers, who take no part in "the decision whether or not to prosecute" an individual, cannot be held liable under such a theory. Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994). Absent any allegations that Deputies Malloy and Wade actively misled the prosecutors or the court in pursuing the arrest and prosecution of Mr. Stone, see Kelly v. Curtis, 21 F.3d 1544 (11th Cir. 1994), the malicious prosecution claim against them is due to be, and will be, dismissed.

**V.   Conclusion.**

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___3rd___ of June, 2003.

L. Scott Coogler
United States District Judge